# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01652-COA

**MARY HAWKINS**                                                                  **APPELLANT**

**v.**

**TOMMIE JONES AND BAPTIST MEDICAL**                        **APPELLEES**
**CENTER-LEAKE INC.**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANSELM J. McLAURIN |
| ATTORNEY FOR APPELLEES: | D. COLLIER GRAHAM JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 11/05/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**TINDELL, J., FOR THE COURT:**

¶1.     Mary Hawkins filed a medical-malpractice suit against Tommie Jones and Jones's

employer, Baptist Medical Center-Leake Inc. (BMC-Leake) (collectively, the Appellees), for

Jones's failure to diagnose a tendon dysfunction and stress fracture in Hawkins's left ankle.

The Leake County Circuit Court granted the Appellees' summary-judgment motion after

finding that the statute-of-limitations period had expired on Hawkins's claim.  Because we

find no error, we affirm the circuit court's grant of summary judgment to the Appellees.

## FACTS

¶2.     On February 25, 2014, Hawkins sought treatment at BMC-Leake for multiple medical

complaints, including pain and swelling in her left ankle.  Hawkins saw Jones, a certified

family nurse practitioner employed by BMC-Leake. Hawkins informed Jones that she had twisted her ankle, and Jones recommended that Hawkins have x-rays taken. Hawkins declined the x-rays at that time. Hawkins then returned to BMC-Leake on March 13, 2014, and received treatment from Dr. William Perry. Dr. Perry ordered x-rays of Hawkins's left ankle, and Dr. Charles Pringle, an independently practicing radiologist employed by the Radiological Group, interpreted the images. In his written report, Dr. Pringle stated there was "[n]o definite acute fracture or dislocation" present.

¶3. Hawkins returned to BMC-Leake on July 18, 2014, and again saw Jones. After Hawkins reported that she had injured her left ankle about five days earlier, Jones referred Hawkins to radiology for x-rays on her lower leg. Drs. Gary Cirilli and Dean Tanner, both independently practicing radiologists with the Radiological Group, interpreted the x-rays. Dr. Cirilli's written report noted soft-tissue swelling around Hawkins's ankle but provided that "no fracture [wa]s identified." Dr. Tanner's written report also noted soft-tissue swelling but likewise stated that "[n]o acute fracture or dislocation" was observed.

¶4. Hawkins next saw Jones on July 24, 2014, when Jones once more referred Hawkins to radiology for an MRI. Hawkins refused the MRI at that time. Hawkins then saw Jones on August 26, 2014. In addition to recommending a referral to an orthopedic specialist, Jones once again recommended an MRI for Hawkins's unresolved ankle condition. Hawkins refused both of Jones's recommendations at that time. On September 9, 2014, Hawkins consented to a referral to a radiologist for an MRI. Dr. Catherine Sorrell, another independently practicing radiologist with the Radiological Group, interpreted the MRI

2

images. Dr. Sorrell's written report contained no mention of a fracture or dislocation but noted the presence of "[e]xtensive edema, arthritis, and erosive changes throughout the joints of the ankle and midfoot."

¶5.    Jones referred Hawkins to an orthopedic specialist at the Mississippi Sports Medicine Clinic (MSMC). Hawkins saw Dr. Jamey Burrow at MSMC on September 23, 2014. Dr. Burrow's summary from the September 23, 2014 visit indicated that he ordered additional x-rays on Hawkins's left ankle. Dr. Burrow's medical summary stated that the x-rays showed Hawkins had "a posterior tibial tendon dysfunction with a fibular stress fracture, healing." Dr. Burrow's medical summary also indicated that he had "talked to the patient about the diagnosis and treatment plan." Dr. Burrow's initial treatment plan involved placing Hawkins's left ankle in a cast and brace. If the cast and brace failed to control Hawkins's ankle injury, Dr. Burrow told Hawkins she would benefit "long term" from a surgical procedure called a tibiotalocalcaneal arthrodesis. Hawkins stated that surgery was eventually recommended either in November 2014 or on December 10, 2014,[1] and that she underwent the procedure in January 2015.

¶6.    Hawkins provided the Appellees with a notice of claim dated October 14, 2016, and informed the Appellees of her intent to pursue a medical-malpractice claim against them. On December 13, 2016, Hawkins filed her complaint against the Appellees. The Appellees answered and asserted their affirmative defenses. On August 17, 2017, the Appellees moved

---

[1] In her complaint, Hawkins asserted that surgical treatment was recommended to her on December 10, 2014. In her appellate brief, however, Hawkins states that Dr. Burrow informed her in November 2014 that surgery was her only remaining treatment option.

for summary judgment on the ground that the statute-of-limitations period had run on Hawkins's medical-malpractice claim. On October 27, 2017, the circuit court entered an order finding "that the statute of limitations began to run on September 23, 2014[,] when [Hawkins] became aware of her injury . . . ." Concluding that the applicable statute-of-limitations period had expired by the time Hawkins provided the Appellees with pre-suit notice of her intention to file her medical-malpractice claim, the circuit court granted the Appellees summary judgment. Aggrieved, Hawkins appeals.

## STANDARD OF REVIEW

¶7. Appellate courts review de novo a trial court's grant of summary judgment. *Pollan v. Wartak*, 240 So. 3d 1185, 1190 (¶12) (Miss. 2017). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The movant bears the burden to show the absence of a genuine issue of material fact, and we view the evidence in the light most favorable to the nonmovant. *Pollan*, 240 So. 3d at 1190 (¶12).

¶8. "The running of the statute of limitations is an issue appropriate for resolution via summary judgment if there exists no genuine issue of material fact concerning whether the statute has run." *Id.* "Issues concerning the statute of limitations are questions of law, which are reviewed de novo." *Bryant v. Dent*, 270 So. 3d 976, 978 (¶8) (Miss. Ct. App. 2018).

## DISCUSSION

¶9. In granting the Appellees summary judgment, the circuit court found the statute-of-

4

limitations period began to run on September 23, 2014, when Hawkins first became aware that she had a previously undiagnosed ankle injury. Hawkins contends on appeal, however, that she reasonably failed to discover the full scope of the Appellees' negligence until either November or December 2014 when surgery was finally recommended as her only remaining treatment option. Hawkins therefore argues the circuit court erroneously found that the statute-of-limitations period on her claim began to run on September 23, 2014.

¶10. A two-year statute-of-limitations period applies to claims for injuries or death arising from medical malpractice. *Pollan*, 240 So. 3d at 1192 (¶17). Mississippi Code Annotated section 15-1-36(2) (Rev. 2012) provides:

> [N]o claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered . . . .

¶11. As the Mississippi Supreme Court has explained:

> The focus of Section 15-1-36(2) is upon the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury. Thus, the statute of limitations does not begin to run until the plaintiff (1) has knowledge of the injury, (2) has knowledge of the cause of the injury, and (3) knows the relationship between the practitioner and the injury. Applying this standard, this Court has focused on when a plaintiff, exercising reasonable diligence, should have first discovered the negligence, rather than the injury.

*Pollan*, 240 So. 3d at 1192 (¶17) (citations and internal quotation marks omitted).

¶12. "[T]he statute of limitations should begin to run when the plaintiff should have reasonably known *of some negligent conduct*, even if the plaintiff does not know with

5

absolute certainty that the conduct was legally negligent." *Id.* at 1193 (¶20). Here, the date Hawkins learned she would need surgery "is not relevant to the running of the statute of limitations if she previously knew or should have known that the [Appellees' alleged] negligent conduct caused her injury." *Id.* No dispute exists that on September 23, 2014, Hawkins learned she had a tendon dysfunction and stress fracture in her ankle that had remained previously undiagnosed despite the prior medical treatment she had received from the Appellees. Hawkins further learned on the same date that her tendon dysfunction and stress fracture would require additional treatment—a cast and brace initially as well as possible surgery in the long term. We therefore agree with the Appellees that, as of her September 23, 2014 visit with Dr. Burrow, Hawkins "knew, or reasonably should have known," not only the alleged "act, omission, or neglect" forming the basis of her suit "but also the occurrence of at least some associated injury—pain, disability, lost wages, and medical expenses to that point in time, and the prospect of additional injury and damages including casting, bracing[,] and surgery through anticipated recovery."

¶13. The record clearly demonstrates that September 23, 2014, was the date "when a plaintiff, exercising reasonable diligence, should have first discovered the [Appellees' alleged] negligence, rather than the injury." *Id.* at 1192 (¶17). Accordingly, we find the circuit court correctly determined that no genuine issue of material fact existed that the two-year statute-of-limitations period on Hawkins's claim began to run on September 23, 2014, and had already expired when Hawkins provided the Appellees with pre-suit notice on October 14, 2016. We therefore find this argument lacks merit.

6

**CONCLUSION**

¶14. Because we find the applicable statute of limitations bars Hawkins's medical-malpractice claim, we affirm the circuit court's grant of summary judgment to the Appellees.

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. C. WILSON, J., NOT PARTICIPATING.**